UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| LAWRENCE E. SHIVELY, | ) |
| | ) |
| Plaintiff, | ) No. 1:22-cv-00283-CLC-SKL |
| | ) |
| v. | ) |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

Plaintiff Lawrence E. Shively ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying him childhood or child's disability insurance benefits ("CDIB").[1] Each party moved for summary judgment and filed supporting briefs [Doc. 15, Doc. 16, Doc. 22, & Doc. 23]. This matter is now ripe, and for the reasons stated below, I **RECOMMEND:** (1) Plaintiff's motion for summary judgment [Doc. 15] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 22] be **GRANTED**; (3) the decision of the Commissioner be **AFFIRMED**; and (4) this case **CLOSED**.

I.  ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 19 ("Tr.")], Plaintiff filed an application for CDIB on January 19, 2018 (Tr. 322). Plaintiff originally alleged an onset of disability date of October 13, 1991, the day he was born (Tr. 20). He subsequently amended the alleged onset date

---

[1] CDIB are available to child applicants or to adult applicants who establish disability that began before they turned 22 years old (and meet other requirements). The benefits are based on the earnings records of the claimant's parent. *See* 20 C.F.R. § 404.350.

to April 1, 2012 (Tr. 20). Plaintiff's CDIB claim was denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge ("ALJ"). On March 17, 2020, the ALJ issued a decision dismissing Plaintiff's request for an administrative hearing after determining Plaintiff's CDIB claim was barred by application of the doctrine of res judicata, based on prior applications Plaintiff had filed[2] (Tr. 135-38). On November 27, 2020, the Appeals Council reversed the ALJ's dismissal (Tr. 139), holding res judicata did not apply and that the ALJ "may take any further action needed to complete the administrative record." (Tr. 142).

The ALJ then conducted an administrative hearing on April 8, 2021, by telephone (Tr. 51-77). On May 26, 2021, the ALJ issued an unfavorable decision, finding Plaintiff was not under a disability as defined in the Social Security Act at any time between the alleged onset date of April 1, 2012, and the date Plaintiff turned 22 for CDIB purposes, October 12, 2013. *See* 20 C.F.R. § 404.102 ("You reach a particular age on the day before your birthday."). The ALJ therefore concluded Plaintiff was not entitled to CDIB (Tr. 40). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II.  FACTUAL BACKGROUND

### A.  Education and Employment Background

Plaintiff was born October 13, 1991, making him 20 years old on the amended alleged onset date, which is defined as a "younger person" under Social Security Administration ("SSA")

---

[2] Plaintiff applied for disability insurance benefits and SSI on January 13, 2013, alleging disability beginning October 13, 1991. These claims were denied at the initial level on May 23, 2013. Plaintiff requested reconsideration only for the SSI application, which was denied on August 26, 2013, and Plaintiff did not pursue any further administrative appeals of the SSI claim (Tr. 135). Plaintiff filed a new application for SSI on February 11, 2015, alleging disability beginning December 1, 2013 (Tr. 135). As explained in greater detail below, this second SSI application was ultimately granted with a finding of disability as of the application date of February 11, 2015.

regulations. 20 C.F.R. § 404.1563. He has at least a high school education and is able to communicate in English. He has no past relevant work.

### B. Medical Records

In his disability report, Plaintiff alleged he was disabled due to brain dysfunction, acid reflux, type 1 diabetes, and allergies (Tr. 352). While there is no need to summarize all of the medical records herein, the relevant records have been reviewed.

### C. Hearing Testimony

At the telephonic hearing before the ALJ on April 8, 2021, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. The transcript of the testimony from the hearing has been carefully reviewed (Tr. 50-77).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The SSA determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.[3]

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

B. The ALJ's Findings

First, the ALJ determined Plaintiff had not yet turned 22 as of the amended alleged onset date of April 1, 2012. At step one of the process, the ALJ found Plaintiff had not engaged in substantial gainful activity since that time. At step two, the ALJ found Plaintiff had medically determinable impairments of insulin dependent diabetes mellitus, adjustment disorder with depressed mood, attention deficit hyperactivity disorder ("ADHD"), borderline intellectual functioning, and cannabis use disorder. At step three, the ALJ found Plaintiff did not have an

---

[3] As mentioned, Plaintiff was over the age of 18 when he applied for CDIB; accordingly, this five-step method applies. *See* 20 C.F.R. § 404.1505(a).

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next the ALJ found that, prior to age 22, Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404. 1567(b), with the following additional restrictions:

- He can never climb ladders, ropes or scaffolds.
- He can never be exposed to workplace hazards.
- He can understand, remember, and carry out only simple, routine tasks.
- He can maintain concentration, persistence, and pace for simple, routine tasks with customary work breaks.
- He should not be required to have high level production goals.
- He can only have occasional contact with the public, coworkers, and supervisors.
- He cannot be required to perform team tasks.
- He can adapt to only gradual and infrequent change.

(Tr. 37).

At step four, the ALJ found Plaintiff did not have any past relevant work performed at substantial gainful levels. At step five, however, the ALJ found there were occupations with jobs existing in substantial numbers in the national economy available to a person with Plaintiff's RFC, including garment sorter, cleaner/housekeeping, and mail clerk (Tr. 40). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time prior to October 12, 2013, the date Plaintiff turned 22.

IV.   ANALYSIS

Plaintiff asserts the ALJ's decision should be reversed and this case remanded for an award of benefits, or in the alternative, remanded "for further proceedings in accordance with [the] law, including further development of the record, and the opportunity to have an additional hearing." [Doc. 16 at Page ID # 1783]. Specifically, Plaintiff argues the ALJ "violated 20 C.F.R. § 404.1520c during the evaluation of the medical opinion evidence of record." [*Id.* at Page ID # 1777].

Some additional background information provides context for the parties' arguments. As mentioned above, Plaintiff applied for supplemental security income ("SSI") on February 11, 2015, and he was awarded SSI benefits on December 7, 2017 (Tr. 90), by a different ALJ ("ALJ Gray"[4]). Plaintiff did not apply for CDIB in conjunction with his February 2015 SSI application, and he asserted an alleged onset date of December 1, 2013 (Tr. 95). However, because SSI is not payable until the "month after the month in which the application is filed," ALJ Gray only considered whether Plaintiff established disability as of the SSI application date, February 11, 2015 (Tr. 95 (citing 20 C.F.R. § 416.335)).

At some point, Plaintiff decided to apply for CDIB in conjunction with his SSI application. Accordingly, he requested review of the December 2017 decision by ALJ Gray, specifically to challenge the "lack of consideration" of Plaintiff's eligibility for CDIB benefits (Tr. 136) and ALJ Gray's reliance on the February 11, 2015, application date as Plaintiff's established onset of disability date.[5] Although Plaintiff did not actually apply for CDIB in connection with his SSI

---

[4] ALJ Gray issued the December 2017 favorable SSI decision, and ALJ Benedict issued the May 2021 unfavorable CDIB decision currently before the Court. All references to "the ALJ" without a specified surname are references to ALJ Benedict.

[5] The February 11, 2015, established onset of disability date is approximately 16 months after Plaintiff turned 22 for CDIB purposes.

application, Plaintiff asserts his mother inquired about CDIB during the SSI application process (Tr. 136). Regardless, the Appeals Council denied Plaintiff's request for review of ALJ Gray's decision, finding no basis to change it. According to the administrative record, "[n]o further appeal followed the Appeals Council's action, and the December 7, 2017 decision . . . thus became administratively final." (Tr. 136). It appears Plaintiff did not seek judicial review of the final administrative decision regarding his SSI claim. Rather, Plaintiff filed a separate CDIB claim on January 19, 2018, the administrative denial of which is currently before the Court.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may

not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B. The ALJ's Consideration of the Medical Opinion Evidence

To assess a claimant's RFC, ALJs are required to consider all of the relevant evidence in a claimant's record, including the medical opinion evidence. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Under 20 C.F.R. § 404.1520c, an ALJ is required to consider multiple factors in evaluating medical opinion evidence, including (1) supportability, (2) consistency, (3) a source's relationship with the claimant, (4) specialization, and (5) other supporting or contradicting factors. This rule, which applies only to claims filed on or after March

8

27, 2017, "notably reduces the articulation standards required for ALJs in assessing medical source opinions" from the standards applicable to earlier-filed claims. *Gourley v. Comm'r of Soc. Sec.*, No. 2:21-CV-99, 2022 WL 4546376, at *5 (E.D. Tenn. Sept. 28, 2022) (cleaned up and citation omitted). "Supportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." *Jones v. Berryhill*, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019) (citation omitted). While the ALJ is required to consider the relevant factors, the ALJ is not required to explain their consideration in the written decision. 20 C.F.R. § 404.1520c(b)(2).

The regulations explain that, regarding supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 1520c(c)(1). Regarding consistency, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 1520c(c)(2).

If a source offers multiple opinions, the ALJ is not required to articulate their assessment of every single medical opinion; rather, they can articulate how they considered all of that source's opinions "in a single analysis." *Id.* § 1520c(b)(1).

The ALJ included the following paragraph in the May 26, 2021, written decision, which Plaintiff contends is insufficient to meet these standards for evaluating medical opinion evidence:

> As for the medical opinion(s) and prior administrative medical finding(s), I cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. I have fully considered the medical opinions and prior administrative medical findings as follows: as previously

9

discussed, I found the DDS psychological consultants' assessments (Exhibits B2A; B4A) and the physical portions of Dr. Huffman's opinion (Exhibit B23F) generally persuasive; the consultative psychological evaluation from July 2015 (Exhibit B36F), the mental portions of Dr. Huffman's October 2016 opinions (Exhibits B23F; B26F), the other opinion evidence after 2013 (e.g., Exhibits B18F; B22F; B25F), and the opinion evidence prior to 2010 (e.g., Exhibits B19E; B28E; B3F; B5F; B7F; B10F) partially persuasive; the hearing testimony and other statements of the claimant and his mother (e.g., Exhibits B5E; B31E; B32E; B33E; B34E), the claimant's mental health treatment notes from Lighthouse Counseling Center (Exhibit B11F), Parkridge Valley Hospital (Exhibits B12F; B13F), and Moccasin Bend Mental Health Institute (Exhibit B14F), and the evaluations at CBI Counseling Center (Exhibits B1F; B16F), somewhat persuasive; and the DDS medical consultants' assessments (Exhibits B2A; B4A) and the various GAF scores (e.g., Exhibits B1F; B11F; B14F; B16F) unpersuasive, and I did not rely upon or assess the persuasiveness of the consultative psychological evaluation from May 2013 (Exhibit B35F), for the reasons set forth above.

(Tr. 39). Plaintiff argues there "is no way to trace the ALJ's reasoning," and further that "the ALJ violated 20 C.F.R. § 404.1520c by failing to consider the supportability and consistency factors." [Doc. 16 at Page ID # 1777].

As the Commissioner points out, however, Plaintiff's argument overlooks the rest of the ALJ's written decision, which does address consistency, supportability, and other relevant factors as they apply to the opinion evidence in this case. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (endorsing examination of ALJ's entire decision when reviewing ALJ's assessment of opinion evidence); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.").

For example, when addressing step three, the ALJ wrote:

I found the DDS psychological consultants' assessments (Exhibits B2A; B4A[6]) generally persuasive because they were prepared by acceptable medical sources with significant program knowledge who also had the opportunity to review much of the record before reaching conclusions largely consistent with the record as a whole and supported by the evidence discussed below, though I found the mild limitation proposed in one functional area did not fully reflect the claimant's issues in understanding, remembering, or applying information.

I found the consultative psychological evaluation from July 2015 (Exhibit B36F) partially persuasive for similar reasons. Although this evaluation was performed after the relevant period, it reached conclusions consistent with the DDS assessments covering the period now at issue, but I found it had somewhat limited persuasiveness because the examiner had no contact with the claimant prior to his attaining age 22.

I found the hearing testimony and other statements of the claimant and his mother (e.g., Exhibits B5E; B31E; B32E; B33E; B34E) somewhat persuasive to the extent that I accept that they genuinely believe the claimant to be so limited, but I note these are purely subjective layperson assessments that are not fully consistent with the overall record or supported by the opinions of acceptable medical sources that were based in part on objective criteria.

I found the claimant's mental health treatment notes from Lighthouse Counseling Center (Exhibit B11F), Parkridge Valley Hospital (Exhibits B12F, B13F), and Moccasin Bend Mental Health Institute (Exhibit B14F) somewhat persuasive because they were prepared during the relevant period by mental health professionals with some treating relationship with the claimant, but because these records were prepared for a purpose far different from a disability assessment and covered only a short period, they provided limited insight into the matters at issue here. Further, the evaluations at Parkridge Valley Hospital and Moccasin Bend Mental Health Institute were performed during a relatively brief period of symptom exacerbation due to multiple stressors, and are thus not reflective or the claimant's mental status during the bulk of the period at issue.

I found the evaluations at CBI Counseling Center (Exhibits B1F; B16F) somewhat persuasive because they were supported by

---

[6] The DDS psychological consultants offered their opinions in November 2018 and July 2019 (Tr. 107-12; Tr. 121-26), but the record reflects their opinions relate to the time period at issue in this case, that is, the period ending October 12, 2013 (Tr. 105; Tr. 124).

11

> direct examinations of the claimant during the relevant time period and reached conclusions regarding his mental abilities that were consistent with his test results. However, the caveats regarding the claimant's marijuana use and the spread in his test scores indicated the need for caution when interpreting these reports.
>
> I found the mental portions of Dr. Huffman's October 2016 opinions (Exhibits B23F; B26F) partially persuasive. Although these opinions were offered after the claimant attained age 22, Dr. Huffman had a treating relationship with the claimant throughout the relevant period. However, he is not a mental health professional, did not opine on many areas due to his lack of knowledge, and reached some conclusions that were not consistent with his treatment notes or supported by other evidence.

(Tr. 29-30).

Later in step three, the ALJ discussed details of the many of the records referenced in this discussion. Plaintiff does not address the discussion of the medical record and opinion evidence by the ALJ at steps two and three.

Plaintiff also does not address or challenge, in any meaningful way, the ALJ's reliance on the state agency psychological consultants' opinions in assessing his RFC. The decision makes clear the ALJ also partially relied on post-2013 medical opinion evidence (for example, from Dr. Huffman and Dr. Langford) to assess greater restrictions than those proposed by the state agency psychological consultants. For example, the ALJ assessed a limitation for only "simple, routine tasks," consistent with Dr. Langford's July 2015 opinion that Plaintiff is "able to follow instructions, both written and spoken if not too complicated." (Tr. 37; Tr. 1698). The ALJ also limited Plaintiff to work tasks that do not have high level production goals and involve only gradual and infrequent change, consistent with Dr. Huffman's October 2016 assessment that Plaintiff's ability to maintain concentration, persistence, and pace is "fair," but not "poor" or "none" (Tr. 37; Tr. 1083).

The ALJ acknowledged notes from Plaintiff's providers indicating Plaintiff had "poor insight" and "below average judgment and motivation for change," but that these same providers nevertheless concluded Plaintiff was "teachable" and they recommended Plaintiff undertake vocational training or job placement assistance (Tr. 32). The ALJ further acknowledged treatment records indicating Plaintiff has "anger issues" and he attempted suicide twice following a breakup, among other social-functioning related issues and incidents (Tr. 33). However, the ALJ cited to other evidence that supports the ALJ's finding of no more than moderate social functioning limitations, including repeated observations that Plaintiff was "cooperative and pleasant," he "regularly spends time with family and friends in person and over the phone," and he "generally gets along with authority figures." (Tr. 33).

Viewed as a whole, the ALJ's decision demonstrates that she adequately considered the factors of supportability and consistency, in addition to other relevant factors like specialties and treatment relationship, in evaluating the medical opinion evidence. The ALJ's articulation is sufficient to render the decision capable of meaningful review. Further, the ALJ's evaluation of the relevant factors is supported by substantial evidence, in my opinion. In short, the decision reflects a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010)).

Plaintiff cites to several notations and entries in his medical record which he claims support his CDIB claim and disability onset prior to October 12, 2013. Referencing ALJ Gray's determination that he qualifies as disabled for SSI purposes as of February 11, 2015, Plaintiff argues:

> The record here, as a whole, undoubtedly documents an individual who has been dealing with significant mental health struggles his

13

> entire life. Th[ese] mental health and cognitive issues have been present since grade school and have persisted since that time. A subsequent reviewer would be hard pressed to review this record and determine that Mr. Shively was not disabled prior to turning 22 years of age. There was nothing in the record that indicated that Mr. Shively's mental and cognitive functioning improved or worsened at a specific point. There was no intervening event that would have led to Mr. Shively being disabled now, and not prior to turning age 22.

[Doc. 16 at Page ID # 1782].

Nevertheless, as the ALJ noted, Plaintiff's mental status in February 2015 (when he was awarded SSI benefits) is not "inherently comparable" to his mental status prior to October 12, 2013 (Tr. 31), and it is Plaintiff's burden to establish onset before age 22. In his brief, Plaintiff cites to the results of a neuropsychological evaluation performed when Plaintiff was in sixth grade, in 2004, by Philip Kronk, Ph.D. Plaintiff emphasizes Dr. Kronk found Plaintiff had "significant problems with sustained attention" and would "probably be basically a non-reader all of his life." (Tr. 686). Plaintiff also cites to similar testing performed when he was in ninth grade, emphasizing the testing revealed he would "benefit from peer tutoring, visual aids, staying after school for additional assistance, needs additional time to complete assignments and tests, be allowed to set his own pace, be carefully structured, [and] given recognition for his positive behaviors" among other recommendations [Doc. 16 at Page ID # 1779].

The ALJ addressed Plaintiff's educational history, noting full scale IQ scores of 95 in 1999; 86 in 2001; and 91 in 2006 (Tr. 31). The ALJ also explained:

> [D]espite the multiple issues Dr. Kronk identified in his evaluation, he did not call for the claimant to be institutionalized or even to be classified as "disabled," rather he recommended the claimant receive "non-verbal vocational training . . . and very functional academic skills" instead of more peer directed academic instruction (Exhibit B7F, page 11). However, this recommendation does not appear to have been followed, given the claimant's reported academic path (Exhibit B28E).

14

(Tr. 36).

The ALJ continues her explanation of the significance of the timing of the opinions in light of the pre-22 onset requirement for CDIB:

> Dr. Wray's [December 2015/January 2016] assessment does opine that the claimant is capable of no more than part-time accommodated work (Exhibit B22F, page 3), but he suggested starting the claimant on a pathway of vocational rehabilitation and placement that would allow him time to develop his work skills, another path that was not taken. Accordingly, there is no way to know if the claimant would have been as limited as Dr. Wray predicted or if he might have transitioned to sustained fulltime employment, as another evaluation suggested (e.g., Exhibit B1F, page 8). It bears repeating that the more optimistic of these opinions was based on an evaluation of the claimant performed during the period currently at issue, while Dr. Wray's assessment was not conducted until more than a year afterwards.

(Tr. 36). The ALJ further observed that "significant regulatory changes" have occurred since October 12, 2013, as well as "significant changes in the claimant's life," including the loss of Plaintiff's father in 2014 (Tr. 30-31). The ALJ also noted how Plaintiff's full scale IQ scores declined over time as Plaintiff engaged in "extensive marijuana use" (Tr. 31).

In addition to the foregoing, Plaintiff cites to records from David Solovey, Ph.D., who opined that Plaintiff suffers from a "failure to launch," among other problems (Tr. 1016). These records similarly post-date the October 12, 2013 deadline. The same is true for the additional records/opinions Plaintiff cites from Dr. Huffman, Dr. Wray, and the Tennessee Department of State. ALJs are permitted to consider whether evidence is provided after a claimant's date last insured. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849-50 (6th Cir. 2020) (noting that the Sixth Circuit has "repeatedly embraced" the principle that "evidence of a claimant's medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status" (citation omitted)). Courts continue to apply

this rule under the new regulations that apply to consideration of medical opinions. *See Lane v. Comm'r of Soc. Sec.*, No. 3:20-cv-1105, 2021 WL 8342836, at *10-11 (N.D. Ohio May 24, 2021) (applying new regulations and holding: "The ALJ complied with the regulations by explaining that Knoll's opinion was not persuasive because it: (1) was not issued until 15 months after the relevant period; and (2) not consistent with the medical evidence from the relevant period."), report and recommendation adopted, 2023 WL 2733549 (N.D. Ohio Mar. 31, 2023).

This is not to say that all medical or opinion evidence collected outside of this time period is irrelevant. *See DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006) ("We recognize that evidence presented at an earlier hearing or predating the onset of disability, when evaluated *in combination with later evidence*, may help establish disability.") (emphasis in the original). However, medical evidence becomes less relevant as the gap of time between the opinion and the alleged onset date widens. *See* 20 C.F.R. § 404.1512(d)(2) ("By 'complete medical history,' we mean the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application."); *Davis ex rel. Smith v. Comm'r of Soc. Sec.*, No. 1:08–CV–00291, 2009 WL 2884142, at *10 (S.D. Ohio Sept.1, 2009) (discounting an opinion because it was obtained nine months prior to the alleged onset date). Contrary to Plaintiff's suggestion, however, the ALJ's decision reflects she did not disregard the earlier (or later) evidence. Nor did the ALJ rely on a single "intervening event" to reconcile ALJ Grayson's favorable decision with her own unfavorable one. Rather, the ALJ carefully examined the longitudinal record of Plaintiff's impairments, articulated the weight assigned to the opinion evidence, properly assessed Plaintiff's subjective statements and those of his mother (which Plaintiff does not challenge), assessed an extremely restrictive mental RFC, and determined Plaintiff failed to establish disability onset before October 12, 2013. Having reviewed the record

16

and the parties' arguments, I find the ALJ's decision is properly articulated and adequately supported, consistent with SSA regulations and policies. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted)).

## IV. CONCLUSION

For the reasons set forth above, I **RECOMMEND**[7] that:

1) Plaintiff's motion for summary judgment [Doc. 15] be **DENIED**;

2) the Commissioner's motion for summary judgment [Doc. 26] be **GRANTED**;

3) the final decision of the Commissioner finding Plaintiff is not entitled to CDIB benefits be **AFFIRMED**; and

4) this case be **CLOSED**.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).